30355. FLEMING *v.* THE STATE.

DECIDED MAY 25, 1944. REHEARING DENIED JULY 28, 1944.

A. S. Skelton, William Hall, for plaintiff in error.

Hope D. Stark, solicitor-general, J. B. G. Logan, contra.

MACINTYRE, J. Louis Fleming and T. O. Cawthon were indicted for an assault with intent to murder, in that they unlawfully and with malice aforethought did shoot Farris Brewer and Verner Brewer with the intent to kill. Cawthon was tried and convicted as charged on May 31, 1943. Cawthon v. State, ante. Fleming was tried and convicted on June 1, 1943. His motion for a new trial was overruled, and he excepted. The evidence tended to show that Fleming was driving his car down the public highway from Baldwin to Homer, in Banks County; that the only other occupant of the car was a man named Cawthon; that they passed a car driven by Verner Brewer, son of Farris Brewer, sheriff of Banks County, in which the sheriff and a man by the name of Mason were also riding; that Verner Brewer called his father's attention to the fact that the other car appeared "loaded, and that the springs stood straight down on the axle, and looked as though it was loaded with whisky;" that the sheriff followed the other car when it turned off the highway into the Middle River Road; that he followed it very closely, not more than ten feet from its rear bumper, for some distance down this road; that the spotlight from the sheriff's car was turned into the other car, and later the siren was turned on (the sheriff testifying that blowing the siren was the method used by an officer to notify a car traveling on the public highway to come to a stop); that Fleming's car pulled to the right of the road and stopped, and the sheriff's car pulled up beside it, lacking about eighteen inches of being on a line with the front of the other car; that just as the sheriff's car stopped, and just as the sheriff,

who was on the side next to the defendant's car, was preparing to open the door, but before he had opened it, Cawthon, who was on the opposite side of Fleming's car, reached and got a shotgun, and, as Cawthon knelt on the seat, Fleming, who was between Cawthon and the sheriff's car, rolled his window down and leaned forward over the steering wheel, and Cawthon fired the gun twice in rapid succession into the sheriff's car, wounding both the sheriff and his son; that no one in either car had spoken to the occupants of the other car, and no one in the sheriff's car had alighted therefrom; that the shots were 'fired from Fleming's car almost instantly— "within half a minute"—after the sheriff's car had stopped; that after the shots were fired from Fleming's car into the sheriff's car, Fleming drove on off, and the sheriff was unable to apprehend the occupants at that time, but did ascertain the tag number of the car. Early on the morning of February 2, 1943, other officers located the car at Fleming's home. It had been washed, and the tag had been removed. The tag was found behind a board up over the back porch of Fleming's house. When first approached about the matter, Fleming denied being present at the time of the shooting, or of having any connection with it. Later, while under arrest, he made a statement 'to the officers in which he said that just as he stopped his car, and just as the car which had signaled by blowing the siren rolled alongside, and within five feet of his car, Cawthon said, "It's them highjackers, I'll stop them;" and that Cawthon then reached for his shotgun and fired two shots in quick succession behind his (Fleming's) back into the sheriff's car; that after the shooting they "pulled off and traveled country roads," except for about a mile on the Lavonia to Carnesville highway; that he then turned off of this road, and when they arrived near Cawthon's house, Cawthon got out, and he (Fleming) proceeded on home. Verner Brewer and Mason testified that the spotlight was playing on the inside of the other car, and that they recognized Fleming and Cawthon; that the sheriff also recognized Fleming; that Fleming lowered the glass on the window, which was on his side of the car, leaned forward and downward over the steering wheel, and this gave Cawthon a clear and unimpeded opening through which to shoot at their car; that Cawthon did shoot through this opening into the car and seriously wounded both the sheriff and his son. The sheriff testified in part: "We

turned our siren on because that is our usual way of stopping a car; my purpose in turning it on was to stop the car. Just at the time I stopped this car I started getting out—it all happened—there wasn't a quarter of a minute—it was just that way. I just placed my hand on the handle of the door to open it, when all this happened. I was preparing to get out to see what he was loaded with; I didn't have a search warrant for the car, as I was not trying to search it; I was going to get up to the car, and if they required a warrant, I would have gone to the justice of the peace and got one. I didn't have a warrant for either of these boys."

The jury were authorized to find that the turning of the light (from the spotlight on the sheriff's car) into the defendant's car, and the turning on of the siren was the customary way for an officer to signal an automobile moving on the highway at night to stop; and to further find that the sheriff wished to question the occupants of the automobile as to the apparent over-loaded condition of the car, and not to search it without first obtaining a search warrant, or to make any illegal arrest; that there was no attempt made to search the car; that no words were passed; that no attempt was made to arrest anyone, and that no act of the sheriff, or the occupants of his car, gave either Fleming or Cawthon the right to believe that an unlawful search of Fleming's car was to be made, or that it was about to be seized, and that when Cawthon fired his loaded shotgun twice into the sheriff's car, he did so with the intent to kill; that Fleming knew from the statements Cawthon made immediately preceding the shots that he intended to shoot, and shoot to kill. This, coupled with Fleming's assistance in rolling down the window, through which the shots passed, and leaning forward over the steering wheel so that the gun could be pointed and fired at the occupants of the sheriff's car just as it came alongside and stopped, also authorized the jury to find that Fleming aided in the act, and participated in the crime charged, including the intent to kill. We think that the evidence authorized the verdict that Fleming was guilty of an assault with intent to murder, in that he was present aiding and abetting Cawthon, who was the principal in the first degree. See in this connection, *Middlebrooks* v. *State,* 118 *Ga.* 772, 774 (45 S. E. 607).

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*